**KOLLER LAW LLC**
David M. Koller, Esq. (Pa 90119)
Jordan D. Santo, Esq. (Pa 320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com
*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **REBECCA STERN,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **MAIN LINE HEALTH, INC. d/b/a** | : | |
| **MAIN LINE HEALTHCARE,** | : | |
| **Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Rebecca Stern (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Main Line Health, Inc. d/b/a Main Line HealthCare (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and the Family and Medical Leave Act of 1993, as amended ("FMLA"). In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
2. Plaintiff is an adult individual residing in Beach Haven, NJ.
3. Upon information and belief, Defendant Main Line Health, Inc. d/b/a Main Line HealthCare is a health care system with a location at 100 E Lancaster Avenue, Penn Wynne, PA 19096 and corporate headquarters located at 3803 West Chester Pike, Suite 250, Newtown

Square, PA 19073.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweek in the current or preceding year.
5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.
6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.
7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
9. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.
10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant

to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff was domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted her administrative remedies under the ADA and the PHRA.

15. On or about April 2, 2025, Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation against Defendant.

16. The Charge was assigned a Charge Number 530-2025-04945 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated August 10, 2026.

18. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.

20. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. On or about September 8, 2003, Defendant hired Plaintiff in the position of Certified Registered Nurse Practitioner ("CRNP") at Lankenau OB/GYN Care Center ("LOGCC).

23. Plaintiff was well qualified for her position and performed well.

## PLAINTIFF IS DISABLED

24. Plaintiff suffers from the serious medical condition of complex migraine syndrome which is considered to be a disability under the ADA and the PHRA.

25. The major life activities affected by complex migraine syndrome include, but are not limited to, communicating, concentrating and working.

26. Plaintiff notified Teri Wiseley, Practice Manager, of her disability via text message.

## PLAINTIFF'S SUPERVISOR PRESSURED PLAINTIFF TO RESCHEDULE A SURGERY

27. In or around late April or early May 2024, Wiseley pressured Plaintiff to reschedule a previously scheduled surgery, explicitly stating she could not "spare" her absence.

## PLAINTIFF WAS REQUIRED TO UTILIZE FAMILY AND MEDICAL LEAVE ACT LEAVE DUE TO HER DISABILITY

28. Due to Plaintiff's worsening disability symptoms, she was hospitalized and received emergency medical treatment on several occasions including, but not limited to, from

June 17 to June 21, 2024, August 28 to August 29, 2024, and December 23 to December 25, 2024.

29. All of the aforementioned absences were later covered by Family and Medical Leave Act ("FMLA") leave and approved by Lincoln Financial, Defendant's third-party administrator.

**WISELEY PRESSURED PLAINTIFF TO PERFORM WORK DURING HER HOSPITALIZATION IN JUNE 2024**

30. Importantly, Plaintiff was placed in the intensive care unit ("ICU") from June 17 to June 18, 2024, during her hospitalization from June 17 to June 21, 2024, which she informed Wiseley of.

31. On June 18, 2024, Wiseley sent Plaintiff text messages pressuring her to confirm her return to work date, even though Plaintiff had not yet seen the Neurologist that day or had been discharged.

32. On June 19, 2024, Wisely sent Plaintiff multiple text messages requested work-related information, specifically the location of patients' FMLA paperwork and information related to the patients' FMLA application, despite Plaintiff informing Wiseley that same day that she was not doing well and was exhausted from a lack of sleep from spending two (2) days in the ICU.

**DEFENDANT ATTEMPTED TO REDUCE PLAINTIFF'S HOURS**

33. In or around late July or early August 2024, Plaintiff met with Wiseley, Cassie DiPasquale, Human Resources Representative, and two (2) other members of management.

34. Wisely attempted to reduce Plaintiff's hours from full-time to part-time allegedly due to "low patient volume and not needing time for administrative duties", or words to that effect.

35. Importantly, Plaintiff was the only one in the office who would have been affected by this plan.

36. Plaintiff complained, and Plaintiff's patient volume was subsequently increased after she did so.

**<u>DEFENDANT ISSUED PLAINTIFF A PERFORMANCE IMPROVEMENT PLAN DUE TO HER ABSENCES DUE TO HER DISABILITY/APPROVED FMLA LEAVE</u>**

37. On or about August 28, 2024, immediately following an episode related to her disability in which she required emergency medical attention, Wiseley placed Plaintiff on an attendance-related Performance Improvement Plan ("PIP").

38. Wiseley specifically cited absences directly related to her disability, including time spent hospitalized in intensive care, and for absences on January 2, 2024 and July 11, 2024 due to testing positive for COVID-19 and contracting shingles, respectively.

39. Wiseley did not follow Defendant's attendance policy in issuing Plaintiff this PIP.

40. Wiseley refused to accommodate Plaintiff with these absences and instead disciplined her for them.

**<u>DEFENDANT ISSUED PLAINTIFF A POSITIVE PERFORMANCE REVIEW</u>**

41. In or around late September 2024, Plaintiff received a positive performance evaluation, which included statements that she was a "great NP" and provided "excellent counsel to patients."

## DEFENDANT ISSUED PLAINTIFF A SECOND PIP

42. However, on or about November 14, 2024, Wiseley and Dr. Nicole Salva, OB/GYN and Plaintiff's Supervising Physician, issued Plaintiff a second PIP for alleged deficiencies in her clinical performance.

43. The allegations were either entirely unfounded or exaggerated, including an incident involving administration of an expired vaccine. Laura Platton (non-disabled), Registered Nurse, acknowledged her involvement but was not disciplined by Defendant.

44. Importantly, in or around November 2024, an independent review of charts by billing and coding scored Plaintiff with 98% accuracy for her medical billing.

45. This showed Plaintiff's clinical documentation was accurate and complete, as insurance would not have provided reimbursements for the accounts for which she submitted bills.

## DEFENDANT HEAVILY SCRUTINIZED PLAINTIFF'S WORK PRODUCT FOLLOWING A LEAVE OF ABSENCE DUE TO HER DISABILITY

46. Following Plaintiff's additional absences due to her disability from December 23 to December 25, 2024, Dr. Salva intensified scrutiny of Plaintiff's work performance, nitpicked her work, but did not offer any reasonable accommodations for Plaintiff's disability.

## PLAINTIFF APPLIED AND WAS APPROVED FOR INTERMITTENT FMLA LEAVE

47. On December 28, 2024, Dr. Gambrill Murray, Primary Care Physician, wrote Plaintiff a letter stating that Plaintiff would need to apply for Intermittent FMLA leave due to her disability.

48. That same day, Plaintiff submitted Dr. Murray's letter and proceeded to apply for Intermittent FMLA leave through Lincoln Financial.

49. On December 30, 2024, Lincoln Financial approved Plaintiff's request for Intermittent FMLA leave from December 30, 2024 to June 15, 2025.

50. On January 17, 2025, Dr. Murray submitted additional information regarding Plaintiff's FMLA leave, in order to cover Plaintiff's disability-related absences from June 2024.

51. On January 21, 2025, Lincoln Financial approved Plaintiff's application for Intermittent FMLA leave from June 14, 2024 to June 15, 2025.

**DEFENDANT PLACED PLAINTIFF ON ADMINISTRATIVE LEAVE**

52. On or about January 27, 2025, Wisely and Dr. Salva called Plaintiff and placed her on administrative leave due to an alleged patient-care incident described by management as a "near miss/critical safety issue."

53. Plaintiff had signed off on the patient's chart the same day that she examined the patient, but Dr. Salva had not reviewed the chart in her inbox for at least a week.

54. Plaintiff refuted this allegation, detailing her compliance with the standard of care and highlighting that other providers, not including Plaintiff, had failed to recognize critical clinical indicators associated with the patient's condition.

55. Plaintiff was treated differently from her coworkers regarding this alleged patient care incident.

**DEFENDANT TERMINATED PLAINTIFF**

56. On January 30, 2025, Wiseley, Dr. Salva and DiPasquale called Plaintiff and terminated her, claiming "cumulative documented clinical concerns, incomplete documentation, and insufficient patient care."

57. Defendant's stated reason for Plaintiff's termination was pretext.

58. Defendant used isolated clinical incidents, which were either unjustified or unsupported, as cover for discrimination due to her disability.

**PLAINTIFF FILED AN APPEAL**

59. On February 5, 2025, Plaintiff filed an appeal regarding her termination by emailing her dispute letter to Joanne Hill, Human Resources Director.

**DEFENDANT UPHELD PLAINTIFF'S TERMINATION**

60. On February 25, 2025, Hill responded to Plaintiff's appeal, upheld Plaintiff's termination and incorrectly cited facts relating to the timeline of her disability leave and inappropriately referenced her FMLA leave.

61. Defendant discriminated against Plaintiff due to her disability and retaliated against her for requesting a reasonable accommodation in violation of the ADA and the PHRA.

62. Defendant also interfered with and retaliated against Plaintiff for utilizing her rights under the FMLA in violation of the FMLA.

63. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – DISABILITY DISCRIMINATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

64. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

65. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

66. Plaintiff was qualified to perform the job.

67. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

68. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

69. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

70. Plaintiff's disability motivated Defendant's decision to take adverse actions against Plaintiff.

71. The purported reason for Defendant's decision is pretextual.

72. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

73. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

74. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

75. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

76. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

77. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, a disability that

substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

78. Plaintiff was qualified to perform the job.

79. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

80. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

81. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

82. Plaintiff's disability motivated Defendant's decision to terminate Plaintiff.

83. The purported reason for Defendant's decision is pretextual.

84. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

85. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

86. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT III – RETALIATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

87. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

88. Plaintiff engaged in activity protected by the ADA.

89. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

90. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

91. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT IV – RETALIATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

92. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

93. Plaintiff engaged in activity protected by the PHRA.

94. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

95. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT V – INTERFERENCE**
**FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED**

96. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

97. The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

98. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA leave to care for her own serious health condition.

99. Defendant acted in bad faith by interfering with Plaintiff's rights under the FMLA.

100. Defendant knowingly, intentionally, willfully and/or recklessly acted in disregard of the duty to grant Plaintiff's FMLA-related request for leave.

101. Defendant's aforementioned actions violate 29 U.S.C. § 2615(a)(1) of the Family and Medical Leave Act in that the employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

102. As a direct and proximate result of Defendant's unlawful interference with Plaintiff's rights under the FMLA, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to lost wages, pain and suffering, mental anguish, humiliation, loss of fringe benefits, disruption of her personal life and loss of enjoyment of the ordinary pleasures of life.

103. Plaintiff demands judgment in her favor against Defendant for all available equitable relief including, but not limited to: unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

104. Plaintiff further demands judgment in her favor against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those

sums, as liquidated damages under § 2617(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the Family and Medical Leave Act of 1993.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

**COUNT VI – RETALIATION**
**FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED**

105. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

106. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

107. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA Leave to care for her own serious medical condition.

108. Plaintiff gave Defendant sufficient information to allow it to understand that she needed leave for FMLA-qualifying reasons.

109. The retaliation occurred in the form of the continued implementation of a policy that discourages and interferes with Plaintiff's right to invoke her federally protected rights under the FMLA.

110. As a result of Plaintiff's attempt to invoke her FMLA rights, by requesting and utilizing her FMLA rights, Defendant has retaliated against Plaintiff by terminating her employment.

111. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's FMLA leave.

112. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

113. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

114. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

115. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Rebecca Stern, requests that the Court grant her the following relief against Defendant:

(a) Damages for past and future wage loss;

(b) Compensatory damages for other economic and non-economic harm including, *inter alia*, mental anguish and/or emotional distress;

(c) Punitive damages;

(d) Liquidated damages;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(j) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

**JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

**CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: October 23, 2026

**By:** ***/s/David M. Koller***

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*